Ms. Patel v. Moreno Good morning, your honors. May it please the court, Irina Kravchenko, I represent defendant appellant officer Moreno on this appeal. It is officer Moreno's contention that the district court erred when it declined to dismiss the malicious prosecution claim against him based upon qualified immunity. Your honors, first of all, this court has jurisdiction to hear this interlocutory appeal because it is officer Moreno's position that qualified immunity, he's entitled to qualified immunity as a matter of law based upon Plaintiff's version of the facts. As plaintiff alleged in the complaint, as plaintiff set forth in his deposition, and as plaintiff stated in the local rule 56.1. So one of the things that I, I mean, you obviously know our law that suggests that just saying that you are accepting theirs but not actually doing it is not going to be enough. So can you tell me is your, uh, what exactly do you claim that is not in dispute that supports the idea of or supports you having probable cause? Like what specific facts, because I actually only found one, notwithstanding the fact that you guys had a bunch that you alleged weren't in dispute. What, what, what are the ones that you think aren't in dispute? The most pertinent and, and officer Moreno's belief is dispositive with respect to his issue is plaintiff's admission in local rule statement that, and I quote, plaintiff does- Talk in the microphone. I'm sorry. Plaintiff does not dispute the allegations in paragraph 27 to the extent that the intoxilizer 5000 returned a blood alcohol reading, content reading of 0.241. So this fact is admitted by plaintiff as unrefuted. Officer Moreno did not perform the breathalyzer results. A different officer did. Officer Moreno was provided with a report that contained a blood alcohol content level of 0.0, 0.241. What I understood him claiming was that he admits that officer Reevey claimed it, but he does not admit that those results were accurate. Absolutely, your honor. That is plaintiff's contention. However, that is not applicable to officer Moreno. Officer Moreno had nothing to do again with administering the test. He merely was given, was being written a report. You are saying that as far as officer Moreno, he didn't know any claims about whether the mouthpiece was correct or not correct. All he saw was the result, and as far as officer Moreno, that result was sufficient to justify. Absolutely, your honor. That is exactly officer Moreno's position. That result alone was- So it might be that the breath test was wrong, that will deal with officer Reevey. But as far as your client is concerned, he was, could rely on what was agreed upon was the result of that test. Absolutely, your honor. It is unrefuted that the report provided to officer Moreno stated blood alcohol content as 0.241, which exceeds the driving while intoxicated standard, aggravated driving while intoxicated, and all of the related statutes to the information that was before him was enough to charge plaintiff with all of the charges that he did. There was additional observations that were made at the time of the arrest, as which it is officer Moreno's positions are irrelevant because there is no false arrest claim and we do have the test. However, plaintiff also admitted, and those are some of the other facts throughout, that he refused to perform roadside testing, he refused to answer questions, he simply didn't do it. And he also said I could not do it. So a reasonable- Your honor, is there a disagreement about the facts as to how that refusal took place? I mean, I hear your client's side that he bailed the portions of the test. He may not have been willingly participating, but he was obviously drunk when he was performing. While on the other side, you have a father who's distracted by the fact that his son is still in the car, and he is essentially refusing to be cooperative, but he's stone-cold sober from all observation. That seems like something that you're not conceding that. You're not asking us to accept that, you're not saying we willingly accept that version of the facts. Your honor, it is officer Moreno's position that even under that version of the facts, the arguable probable cause test has been met, because the test is, would a reasonable officer in officer Moreno's position believe that there was ground to arrest? And or would a reasonable officer disagree? So- But in the end, you are saying that as far as Officer Moreno, you don't need to do that because you have a referralizer that he had no reason and no one claims that he had any reason to believe was inaccurate. Absolutely, your honor. I have one more question before you sit down. Can you tell me how we should understand the people versus Vandover? It's a New York Court of Appeals case, and my understanding, or my reading of that case, is that failing to complete a field test on its own would not be enough for probable cause. Failing to complete a field test? I'm sorry? You said the field, I'm sorry, I don't have that case handy. This is, you said failing to complete a field test is not enough? So that to me goes to the question of, you know, how much could he rely and infer from the fact that he didn't complete it? Your client says it was because he was drunk, he says it was something else. My question is, does it matter if that alone would not be enough for probable cause? Your honor, the answer is twofold. Number one, we're talking about arguable probable cause here. Again, we just need a reasonable disagreement. If somebody is not performing the test, a reasonable officer could believe that this person is intoxicated. You're saying that as a matter of law, it would be sufficient that to find arguable probable cause just by solely, just by the failure to complete a field test. Well, it's not just that. It's that ultimately, then, Officer Marina- Let's pretend that it's just completing the field test. Would that alone be enough? And what is the case law you have that suggests that? Your honor, that is not Officer Marina's position that that alone is enough. And these facts of this case are not the same. And ultimately, there was the breathalyzer test result. That's, you know, that's the ultimate undisputed fact that is controlling for Officer Marina's position. Thank you. May it please the court. My name is Howard Miller. I'm here on behalf of Officer Rivi. I think this case can't be distinguished from the Okendo case that this court decided. In that case, all you had was someone who had fallen asleep. They discovered a half a bottle of beer in the car and his eyes were watery. And this court found that there was probable cause to arrest. And in the Okendo case, the person actually passed the field sobriety test. You're not allowed. OK, so it is disputed that his eyes were bloodshot and it is not disputed that he didn't have alcohol around. So why is that case wrong? So because he, first of all, it's not disputed that he said he had drunk the night before. He had not showered. His allergies were bothering him. And when the breathalyzer test was administered, it blew the 0.24. Well, the problem is that as to Officer Rivi, there is a question of fact with respect to the breathalyzer. Because he says he took it out of his pocket. And Officer Rivi says, no, it was a new one. And, you know, I may well believe and agree with that, but isn't that a question of fact? So you can't rely on what Officer Marino says that as far as he was concerned, this test has to be taken as real. So you have to tell us something about why there was either probable cause or arguable probable cause before this question breathalyzer. And that goes to what happened at the scene. Now, what is undisputed at the scene that would give your client arguable probable cause? There may be, but I'd like you to tell me. So can I just first address the breathalyzer test? You can't create an issue of fact by just making a conclusory allegation that the test results were fabricated. If that were the case, then every time there's a breathalyzer test, we're going to trial. That would defeat the purpose of qualified immunity. Yes. But here there is a question of where they got the mouthpiece. That's correct. And that, he says, he took an old mouthpiece and your client says, no, I took a new one. And that sounds like an allegation of fact. Now, you know, it may be that on the facts that disappears, but that sounds like an allegation of fact. Well, so even if there was... I'm not saying about the result of the test. Thank you, Your Honor. I understand what you're saying. The district court found that there was no evidence that that made any difference in the test result. So we still have just a conclusory allegation that the test result was wrong. And again, in the case law that we cited, we cited all these cases where someone just said, I didn't smell like alcohol, my eyes were fine, I was sober, and your test results were all wrong, and qualified immunity was still granted. Again, were that not the case, every time somebody's pulled over for DWI, they're going to just say everything the officer said is a lie. And if that's true, then every case is going to go to trial, which defeats the purpose of qualified immunity. We also cited a case by Judge Seibel at the Southern District, where she talked about we don't want to create deterrence to pulling people over. No, counsel. Yes. First, it doesn't mean the thing qualified immunity is not there. Yes. It means that there is not an appeal now, because there is a question of fact. And then when you get, it may be that after depositions and other things, there is no question of fact, and then qualified immunity can apply. So what I want you to tell me, because the question of whether a breathalyzer test came out one way or another, is not the issue of fact that the opposing party raised. The question is, did they use a proper breathalyzer mouthpiece? And that's a question of fact. What I want to know is what there was at the scene. And by the way, I think you're probably right that there was enough at the scene, so that there was no question of fact as to there. But I'd like you to tell me, and not go off into something that I won't buy. I understand, Your Honor. So what you had at the scene, first of all, you had a serious accident. You had someone who said, yes, I was drinking the night before. He had not showered, so you could still have the smell of alcohol on you. He said, well, I have bad allergies. I was driving with the top down. I'm sorry. Yep. Is it conceded that he had the smell of alcohol? He says that he didn't. But again, we cite the cases- Is it conceded that he said I drank the night before? I agree with you that if he had said there is the smell of alcohol, but don't worry, it comes from the night before, that would not be enough. Yes. Is it conceded that he had the smell of alcohol? I want to know, is it conceded that he had the smell of alcohol? Is it conceded that he had bloody eyes? What is it- He doesn't, so he doesn't concede it. But again, we cited cases where there was specific denials, and those were still found in favor of the police officers on qualified immunity. Were the rule otherwise, I could just say if I'm pulled over- When you're saying that your client might not prevail on qualified immunity, the question right now is under our precedent, under Jacques, is it inappropriate for us not to let this case proceed so that a court, a trial could determine whether or not your client- Yes, it is. If we look at the whole purpose of qualified immunity, you don't want to- It would help me if you went back to the facts for just a moment. So on the question of did he smell of alcohol, the police officer says at the scene he did. He says he didn't. And you offer an explanation that would say why he might, but it still seems to me you have a dispute as to that fact, as to what we can't resolve right now. We don't have a dispute of what the officer smelled. We have a dispute that the CHI said, no, I didn't drink and I don't smell. And again, this would happen every time somebody is pulled over. Couldn't also an officer just say every time it was wrong? I mean, like you're asking us to say that one person's testimony doesn't count, but somebody else's testimony does. No, I'm not asking that. I'm saying that you can't create an issue of fact. Going back, if we put aside everything that happened at the scene- Counsel, could you go back and tell me what at the scene Mr. Patel conceded was the case? Yes. That was enough under a very easy arguable problem for us to be. It's enough that he can- No, tell me what it was. Not that he smelled of alcohol because he says I didn't. It's enough that he said he was drinking the night before. You mean that any time somebody concedes that they were drinking the night before, they can be arrested the next day? If they're in a serious accident and then they fail a field sobriety test, yes. Give me a case where that is so. I laid it out in our brief, many cases where people said I could not have, people say I could not possibly have smelled of alcohol and they still awarded- That is arguing whether they smelled of alcohol. You are now saying that when somebody concedes that they drank the night before, that is enough for the police to arrest them? At the scene, I just want to make sure I'm understanding the record correctly. At the scene, Mr. Patel didn't say I may smell of alcohol because I was drinking the night before. He did not say I smell of alcohol. I just want to be clear about that. He did not say that. He did not say that. Let me just finish. Yeah. If he didn't say that at the scene, I'm having difficulty seeing how the officer could rely on, why we don't have a factual dispute as to whether he did or did not smell of alcohol. If he did smell of alcohol, the officer probably relied on it as an element of probable cause, but I can't resolve that. No, what you can look at is, again, officers come upon a serious accident. They talk to the gentleman who says, I was drinking the night before. And he says, I have bad allergies, which is why my eyes are what they are, and it was pollen. Then he fails the field sobriety test. Then they bring him for a breathalyzer test. You can't create an issue of fact that the breathalyzer test was wrong by just speculating that it was wrong. That's- Let's go back to here. You keep going to the breathalyzer test, and I'm telling you, I don't buy it. Okay, so if we go back to the scene. Going back to the scene. Okay, going back to the scene. Again, if we look just at the scene under the case law, and this is under the Okendo case, they come upon a serious accident with a gentleman who says, the night before, I was drinking. And then he fails the field sobriety test. Going back to what you said. I just want to make sure so that we can pull these apart, because this matters, and it matters to all three of us. Yes. Serious accident. By itself? No. Okay, serious, okay, not by itself. Drinking the night before. By itself? By itself, no. No, okay. And then not completing the field sobriety, or failing the field sobriety test by itself? As you cited, a court of appeals case that said it's not by itself. Okay, not by itself. We combine them, we get arguable probable cause. That all three of those things, that not by itself are enough, and then what about him disputing any of them? For example, he said he was drinking the night before, but he is saying, you cannot infer from that that I was drunk. I think, again, if you look at the case law, when you combine all three of these things, you have arguable probable cause, and the standard for qualified immunity. What about his eyes, and conceding that he couldn't see? Is that enough to make a difference? Conceding that he couldn't see? That he couldn't, that he looked blurry. He looked blurry. Again, if you look at the entirety of the situation that they were faced with, someone who said he was drinking the night before, he said my eyes are the way they are because I have bad allergies. I forgot to take my medicine, and I'm driving with the rooftop down. Are you saying that his eyes being that way, and his, together with what is not enough by itself, his failure to do the roadside sobriety test is enough? Yes. That is, to me, the question is, are those things which are conceded enough? Yes. Because that's the only thing that is conceded. Yes, and that hits the nail on the head, and this falls right into the Akendo case. It falls right into the Akendo case, where watery eyes wouldn't have been enough. Somebody's beer could have been a friend. I see four places in the brief where he disputes that he had glassy eyes. I see Marino falsely claimed that Patel had glassy eyes. That's at page four. First spoke with Patel and did not know that Alvina first spoke with him and didn't have slurred speech or glassy eyes. That's at seven. The eyes were not glassy at 24. At four, Greedy falsely contended that he spends and that his bloodshot and were glassy. So I see him actually disputing both the bloodshot and the glassy. I don't think he's disputing that his eyes were red because he talks about an explanation for that being his allergies. When someone said that if my eyes were glassy or if my eyes were red, maybe they could have been because I didn't do this. I don't see him conceding in any way. But aren't you asking us to infer that because he offered the explanation that they must have been glassy? I'm asking what a reasonable officer would believe in those circumstances. That is the same problem as if when we go back to smell of alcohol, the officer says, I smell alcohol. He says, you don't, but if you do, I was drinking the night before, which isn't enough. So the question is the same with respect to the eyes. Does he concede that his eyes are glassy and so on? Or does the officer say, your eyes are glassy, kid. And he said, well, if they are, it's because I have an allergy. That's not the same thing as his saying, my eyes are glassy. And I want to know on this record what I have to take as a given. I think you have to take that the officer observed his eyes being red and that's the explanation he gave. Then I would go back to the Okendo case where the person who was pulled over denied absolutely every aspect of everything. And this court ruled in favor of the police officer. And I would go back to, then if that's going to be the standard, if all the person has to do is deny, no matter what, then we're going to trial every single case like this. And that's not been the law in this circuit. Okay. Thank you. We've been hard on you, but it's, you know, Officer Marino has an easier time. Good morning. Scott Quirinbaum for Mr. Patel. I want to address one fact. The claim was not that he had red eyes. The claim was that he had glassy eyes. That's a world of difference. And maybe I shouldn't concede this, but if I were pulled over after an accident, I could be arrested for drunk driving because I had a drink last night. That's not the law. It's never been the law. Here are the disputed facts, starting with Marino. And there's overlap between Marino and Rivi, obviously. We've gone through it, right? I mean, I think what you need to do is either tell us why it's not enough or why any of them combine. So the ones that we're talking about are whether or not there's a dispute as to the bloodshot eyes, whether or not there's a dispute as to whether or not he smelled, and whether or not there was a dispute about whether or not he pulled it out of his pocket. The other question that you do not dispute was that he didn't complete his field sobriety test. So the big question is either why they don't together equal a probable cause or whether they don't. Everything that Mr. Miller said is disputed. And then they would also say that you can't just merely dispute it. You have to do more than that. So that's where we're trying to focus. But there's more. Let's start with the alcohol in the breath. I don't know how you can do anything other than say there's no alcohol in the breath. But he gave an excellent explanation, Mr. Patel. I had two and a half drinks the night before. I had a full breakfast. I played basketball with my son for the better portion of a few hours. None of that would matter if he actually had alcohol in his breath and didn't dispute it. That is, his explanation would not be enough. The question is, does he dispute that he has alcohol in his breath? And the answer to that, I think, on the record is yes. So the question that we ask is the one thing that is not disputed is that he failed the test at the scene and that that by itself, under the appropriate law, is not enough. So is there anything else that is not disputed that makes that be enough? In which case you lose. Or is there nothing in which case you win against Officer Rivi, not necessarily Marino, if we buy the notion that the ultimate breathalyzer test was not disputed as to Officer Marino. Judge Calabresi, I'll answer your question literally in a second. I just want to, I was addressing the specific laundry list of facts on the scene that raised by Justice Perez. But just as far as the field sobriety test, Marino knew. Again, Rivi's not at the scene. Marino knew that he was injured, knew that Patel was injured. Because Patel is repeatedly claiming him, I'm injured and requesting medical assistance. He knows that he's concerned about his son. And if on summary judgment you're going to draw all inferences in Mr. Patel's favor, coupling that with no alcohol in the breath, no glossy eyes, no slurred speech, which were all claims made by Marino, collectively that leads to an officer saying, now I know why he can't pass all the field sobriety tests. And remember, part of the claim was he was refusing to do them in the first instance. And Patel says convincingly, at least the jury could find, that he knew I was fine and didn't even order the test until I started, when I questioned him, why are you doing an accident report right now, when I'm concerned about my son in addition to being injured. But that's when he says, aha, alcohol in the breath. And there's no other way you can challenge alcohol in the breath other than a denial. I raised the facts about the breakfast and the basketball just because that's reasons to doubt any alcohol in the breath, which was the first laundry list of facts. And so, one other thing, this .241, that's blot up. That is, you are blank faced, pardon my French. Nobody says that. And there's a disputed fact about the first officer to arrive on the scene is Officer Alvino. All right? Now, they say, and correctly, his deposition testimony was that I didn't notice anything, but I wasn't really paying attention. Well, if you approach somebody, the driver, who would literally blow a .241 and it would have been a tiny bit higher, given the length of the gap, you're noticing something. You are absolutely noticing something. Justice Perez, I agree with your reading. I'm now pivoting to the blood alcohol, the breathalyzer or whatever they called it. Excuse me. There is evidence from which, certainly with respect to review, Judge Calabresi, I agree completely about the disputed issue of material fact. I think this court should affirm because there is, as we argue, there isn't subject matter jurisdiction because of the disputed facts and Judge Locke, Magistrate Judge Locke's decision and his reliance on those disputed facts. But there's, even if you question, again, .241, nobody says he's looking like a .241. And at the criminal trial, Officer Rivi testified, admitted on cross-examination, that Mr. Patel exhibited no symptoms consistent with that type of reading. So your argument is that both Officers Marino and Rivi should have, if the machine came to, if that was the reading, they should have immediately- They should have done it again or questioned it because, and again, remember what Mr. Patel says happened. Upon being told, again, he says he never saw the actual readout. But upon being told, he's like, that can't be. Let's do a retest. I'm willing to do a blood test, which from what I understand, I'm not an expert in this area, but from what I understand is more reliable. Now, they have an explanation saying, well, we don't do that. But if everybody knows, and again, everybody being Marino and Rivi, everybody knows that this can't be because there are no, what's the word, corroborative, corroborative symptoms. Coupling that, now I'm sort of pivoting a little bit to the merits. If they all know it's wrong, why the lies? On this record, the jury could find that they lied about every single thing except the reading itself. And with that, I think, A, this court doesn't have subject matter jurisdiction. But B, it can affirm. I want to, in addition to additional questions, I want to raise two, a few other points. I have a problem there that if the officers lied about all sorts of things, but there were admitted facts that everybody agreed on that gave rise to probable cause, our cases say that malicious prosecution does not lie.  They may be liable for other things, but malicious prosecution does not. I don't like that, but that's what our cases say. So it doesn't help you except if the lies mean that there is no agreement on facts that by themselves would be enough to support malicious prosecution. And that's where we were pressing the other side. Sure, and as a general proposition, I agree with that, Judge Calabresi, but not on this record, because they're all dispute. Again, viewing the evidence in light most favorable to Mr. Patel, they're all lies except that the reading was .241. And Judge Perez, as we argued in our brief, I think your reading of what was admitted is correct, which is that's what Patel claims Revy said. Now, I went back and I have what was stated, and he said, and I can't escape from the 56.1B statement in which, where does he say it? They acknowledged that's, Patel acknowledged that's what was read. But the reason why I think your reading is correct, which was our reading, Judge Perez, is why the other additional explanations, which I think gives form to that admission. Something I, Judge Calabresi, oh, I want to make two sort of unrelated points. One, well, related, but even if you agree that qualified immunity is warranted, which we don't think on this record is appropriate, the state law claim survives based on this court's decision in Triolo versus Nassau County. Again, not probable cause, but if it finds qualified immunity. The other is, all of this case law that Mr. Revy, that Officer Revy's counsel is referring to, showed up for the first time in the reply brief. There were arguments being raised in the reply brief for the first time. You say the state law claim survives against both of them or against Officer Marini? Because one thing that we could do in that, if we disagreed with you with respect to Officer Marini, we could then dismiss as to his claim, because that would no longer hear without prejudice, the state law claim and maintain the other one. So, two responses to this. What I should have added is it survives against the county. The state law claim under- I'm sorry if I was not clear. But yes, it is conceivable that the claims could survive against- One person. Marino but not Revy. I think there's enough to hold both- I want to go back to Marino. Yes. Because you are conceding, I just want to be very clear. You are conceding that your client said they said it was .241. If that is true, why do you still have a claim against Marino? Because Marino knows, or should know, that there's nothing corroborative about that and there's- What does that mean? In other words, if- Opposite counsel has said that Officer Marino knows nothing about there being a claim that the mouthpiece was somehow defective. I'm using that generally. If that is so, why can't Officer Marino rely on the concession of that result? Because- If it's a question of fact, whether the mouthpiece was valid, then he's in the same situation as Officer Revy. I don't think he knows about the mouthpiece. I have to concede that. If I'm wrong about that, can I write a 28-J letter just to point that out? But isn't your answer that Marino was the one on the scene, so he knows that he's sober? Correct. So this was a lucky break. The fact that Revy told him that, and even if it's 100% true Revy told him that, he knows it's not true because he was the one on the scene. That's your argument about why we still get Marino. And there's evidence in the record about how Revy turns to him and said, I got him for you. That could be some evidence of them having gathered to- In this context, I hate the word conspired. How much is evidence of conspiracy to get us over? That's what you're- Right, so there's additional, not a lot. I'm not going to lie. But there's some additional evidence in the record that we point out in our brief that suggests that's above the fact that he knows he's not drunk. And that something's rotten in Denmark that also, a little additional stuff. Okay. I see my time is up. Thank you very much. Your Honors, I will waive rebuttal unless the bench has questions for me. Okay. Thank you. Just very briefly, Officer Revy was also allowed to rely on what Marino told him was at the scene. So if there was probable cause at the scene, then there's probable cause for what Officer Revy did. The other thing I just want to mention briefly is that there's no evidence of any kind of malice here. And that was addressed in our brief. With that, thank you. Thank you all. And we will take the matter under advisement.